UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHNATHAN CORNIELUS WHITE,<br><br>　　　　Petitioner<br><br>　　v.<br><br>KAMALA D. HARRIS, State Attorney General,[1]<br><br>　　　　Respondent. | Case No: C 11-03709 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Johnathan Cornelius White ("Petitioner") filed a pro se habeas petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state conviction for possessing cocaine base for sale. The parties are presently before the Court on Petitioner's pro se petition for a writ of habeas corpus. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

**I.	BACKGROUND**

　**A.	STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal:

> On June 18, 2008, about 4:30 p.m., defendant was under observation by three undercover officers. The officers had received information that there was someone selling drugs at a house on Nevin Avenue, and they observed defendant standing in the driveway of the house. The house was in a neighborhood known for crime and drug sales.
>
> A car pulled up and parked across the street from the house and two men exited and approached defendant. They

---

[1] Petitioner was released from custody in 2013, and therefore, the Court substitutes State Attorney General Kamala D. Harris as Respondent in this action. See Belgarde v. Montana, 123 F.3d 1210, 1212 (9th Cir. 1997).

each handed defendant small unidentifiable objects and defendant walked down the driveway and out of view. Shortly thereafter, defendant returned and handed each of the men a small object, and the men left. Defendant repeated similar transactions three more times in the next 30 minutes. During one transaction, the officers were able to identify the object given to defendant as money.

Based on those observations, one of the officers, Richmond Police Detective Mario Chesney, believed defendant was selling drugs. He believed that defendant's trips down the driveway indicated he had a "stash" from which he was retrieving the drugs he was selling to the people who approached the house. Chesney contacted Richmond Police Officer Albert Walle, described defendant, and told Walle that he believed defendant was selling drugs based on Chesney's "several observations" of defendant.

Walle and another officer arrived at the Nevin Avenue house five minutes later in a marked vehicle and dressed in uniform. Walle saw defendant, who matched the description given by Chesney, sitting in a recliner in the driveway of the house. The officers' arrival interrupted a transaction between defendant and two men on bicycles, who rode away when the officers arrived. Walle exited the patrol car approximately 20 feet away from defendant and began to approach him. Defendant looked toward Walle, stood up, and walked toward the front door of the house. Walle yelled for defendant to stop and began running toward defendant. Defendant did not stop and instead opened the front door.

Walle could not catch up to defendant before defendant entered the house. Walle was worried that, if defendant entered the house, Walle would have to enter the house to effectuate the arrest, rather than "safely" arresting defendant outside. Walle did not know if there were other people or weapons in the house, and he was concerned that defendant was nearly twice his size. In order to halt defendant's progress into the house, Walle discharged his Taser at defendant. The Taser caused defendant to fall onto a sofa inside the house and drop a plastic bag that had been in his hand. Defendant also threw another bag across the room.

After arresting defendant, the police discovered the plastic bags contained a number of smaller bags of suspected cocaine base. The police found $327 in defendant's pants and, in the driveway where defendant had gone during the transactions, a grocery bag containing empty baggies, latex gloves, and mail with defendant's name on it.

People v. White, A128317, 2011 WL 1457181, *1-2 (Cal. Ct. App. Apr. 15, 2011).

**B.   PROCEDURAL HISTORY**

On October 15, 2008, Petitioner was charged by complaint with possession of

2

cocaine base for sale in violation of California Health & Safety Code § 11351.5.  Answer, Ex. A, Clerk's Transcript ("CT") 58-60.  The complaint also alleged an enhancement based on four prior felony convictions for possession of cocaine or heroin for sale.  CT 59.

On August 27, 2009, Petitioner's defense counsel, Contra Costa County Deputy Public Defender Michael Kelly, pursuant to California Penal Code § 1538.5, filed a motion to suppress evidence seized following Petitioner's arrest.  CT 77A-77E.  In his motion, Defense counsel argued that the police lacked probable cause to arrest Petitioner, and that the arrest involved the use of excessive force.  Id.

On September 2, 2009, the magistrate held a hearing on the motion to suppress.  CT 3-55.  The next day, the magistrate denied the motion upon finding that: (1) police had probable cause to arrest Petitioner for obstructing a police officer under California Penal Code § 148; and (2) the officer's use of the Taser did not constitute excessive force.  CT 50-51, 55, 82.   Specifically, the magistrate denied the motion, stating:

> [I]t's probably a reason we don't hear about Tasers much because hopefully it's used as a last resort and or a first resort. So without prejudice, any other remedies Mr. White may have in terms of suppressing the evidence, I find the People has survived the motion [to suppress].

CT 55.

On September 11, 2009, the prosecution filed an information restating the felony drug charge and the allegations from the complaint.  CT 83-85.  Although Petitioner instructed his attorney to renew the motion to suppress or bring a motion to set aside the information pursuant to California Penal Code § 995, counsel declined to do so.[2]  As a result, Petitioner filed a motion under People v. Marsden, 2 Cal. 3d 118 (1970) to substitute counsel.  Dkt. 1 at 39.  At the hearing on the motion conducted on January 15, 2010, Petitioner expressed his reasons for seeking to renew his motion or to file a § 995

---

[2] To obtain direct appellate review of a denial of a motion to suppress evidence, after the filing of an information, a defendant must either renew the motion in the trial court under California Penal Code § 1538.5(i), or move to set aside the information for lack of probable cause under Penal Code § 995, and raise the search and seizure issue in the motion to set aside.  People v. Lilienthal, 22 Cal.3d 891, 896 (1978); People v. Hawkins, 211 Cal.App.4th 194, 203 (2012).

3

1   motion. Id. at 39 (citing RT 4); id. at 40 (citing RT 17).³  In response, defense counsel

2   explained that he believed renewing the issue would have been futile, stating: "I could

3   bring a [§] 995 and the same thing is going to happen." Id. (citing RT 9).  At the

4   conclusion of the hearing, the trial court denied Petitioner's motion. Answer, Ex. B, vol. 1,

5   RT 23.

6       On February 19, 2010, a Contra Costa County jury convicted Petitioner of

7   possessing cocaine base for sale. CT 123. At the sentencing hearing held on March 19,

8   2010, the trial court found true Petitioner's four prior-felony-conviction enhancements.

9   RT 217. Petitioner was sentenced to a midterm sentence of four years in state prison for

10  the drug conviction and a consecutive three-year prison term for one of the four prior-

11  felony-conviction enhancements. RT 218-219. The trial court then struck the punishment

12  for the remaining three prior-felony-conviction enhancements. RT 219. The trial court

13  also required Petitioner to register as a drug offender with state authorities. RT 221-222;

14  CT 234-235.

15      On April 15, 2011, the California Court of Appeal affirmed the judgment in an

16  unpublished opinion, and denied Petitioner's claims under the Fourth Amendment and for

17  ineffective assistance of counsel ("IAC claim"). Answer, Ex. D. On the same date, the

18  California Court of Appeal summarily denied Petitioner's state habeas petition, in which

19  he again raised his IAC claim.⁴  Answer, Ex. E.

20      On June 29, 2011, the California Supreme Court denied review. Answer, Ex. G.

21      On July 28, 2011, Petitioner filed the instant petition. Dkt. 1. Though the petition

22  does not specifically identify any claims, it incorporates by reference the arguments

23  presented in the accompanying copies of his direct appeal and state habeas petition. Id. at

24

---

³ The transcripts of Petitioner's Marsden motion hearing and the trial court's ruling are not included in the record because they were ordered sealed. RT 1-22. However, the transcript was made available to Petitioner, who purports to quote from the transcript in his state habeas petition. Dkt. 1 at 39-40.

⁴ Petitioner did not file a state habeas petition in the California Supreme Court; however, the parties agree that Petitioner's IAC claim was exhausted on direct appeal.

6. Therefore, the Court construes the petition as raising three federal claims: (1) violation of the Fourth Amendment based upon the officer's lack of probable cause to effect an arrest; (2) violation of the Fourth Amendment based upon the use of excessive force; and (3) ineffective assistance of counsel in violation of the Sixth Amendment based upon defense counsel's failure to renew the motion to suppress.

Respondent has answered the Petition, and Petitioner has filed a Traverse. Dkts. 8, 9. The matter is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to

1  the decision of the highest state court to address the merits of the petitioner's claim in a
2  reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v.
3  Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual
4  issue made by a State court shall be presumed to be correct," and the petitioner "shall have
5  the burden of rebutting the presumption of correctness by clear and convincing evidence."
6  28 U.S.C. § 2254(e)(1).
7       On federal habeas review, AEDPA "imposes a highly deferential standard for
8  evaluating state-court rulings" and "demands that state-court decisions be given the benefit
9  of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks
10 omitted).  In applying the above standards on habeas review, this Court reviews the "last
11 reasoned decision" by the state court.  See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th
12 Cir. 2004).  The last reasoned decision in this case is the California Court of Appeal's
13 unpublished disposition issued on April 15, 2011.

### III. CLAIMS

#### A. FOURTH AMENDMENT CLAIMS

16      Petitioner contends that his conviction must be set aside in light of the alleged
17 violation of his rights under the Fourth Amendment.  However, Fourth Amendment claims
18 are not cognizable in federal habeas corpus proceedings if a petitioner has had a full and
19 fair opportunity to litigate them in state court.  Stone v. Powell, 428 U.S. 465, 481-82
20 (1976); Villafuerte v. Stewart, 111 F.3d 616, 627 (9th Cir. 1997). "The relevant inquiry is
21 whether [P]etitioner had the opportunity to litigate his claim, not whether he did in fact do
22 so or even whether the claim was correctly decided." Ortiz-Sandoval v. Gomez, 81 F.3d
23 891, 899 (9th Cir. 1996). "Under California law, a defendant can move to suppress
24 evidence on the basis that it was obtained in violation of the [F]ourth [A]mendment."
25 Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990); Cal. Penal Code § 1538.5.  The Ninth
26 Circuit has expressly held that California's suppression procedures, which are set forth in
27 California Penal Code Section 1538.5, provide an adequate opportunity to litigate a Fourth
28 Amendment claim.  Gordon, 895 F.2d at 613-14.  Accordingly, the Court DENIES habeas

1  relief on Petitioner's Fourth Amendment claims, which are not cognizable in a federal
2  habeas proceeding.[5]

### B.   IAC Claim

#### 1.   Background

Petitioner contends defense counsel was ineffective in failing to bring either a renewed motion to suppress the evidence seized following his arrest (including the cocaine and mail bearing Petitioner's name) or file a motion to set aside the information pursuant to California Penal Code § 995.  Specifically, he argues that defense counsel's failure to revive the issue before the trial court forfeited the question for appeal, and that "there could be no strategic reason for failing to preserve the issue . . . ."  Dkt. 1 at 40.  Moreover, Petitioner contends that he was prejudiced by defense counsel's decision on the ground that his Fourth Amendment claims were meritorious.  Id. at 41.

The state appellate court addressed this claim in connection with Petitioner's direct appeal, and initially found that because defense counsel did not renew the motion to suppress before the trial court, he forfeited the issue on appeal.  White, 2011 WL 1457181, *2 (citing People v. Lilienthal, 22 Cal. 3d 891, 896 (1978) (failure to renew motion to suppress forfeits issues on appeal)).  Nonetheless, in light of Petitioner's ancillary claim that counsel's failure to preserve the issue amounted to ineffective assistance, the state appellate court also considered and rejected the claim on the merits.  Id., *2-6.  In particular, the court found, as an initial matter, that Officer Walle had probable cause to arrest Petitioner.  Id., *3.  The court explained:

> "'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime.'" (People v. Thompson (2006) 38 Cal. 4th 811, 818 (Thompson).)  In this case, the officers observed defendant engage in five transactions that could be construed only as drug sales, he did

---

[5] Although Stone prohibits Fourth Amendment claims on collateral review, the Supreme Court has held that Stone does not bar ineffective assistance of counsel claims predicated on Fourth Amendment violations.  See Kimmelman v. Morrison, 477 U.S. 365, 382-83 (1986).  Therefore, Petitioner's Fourth Amendment issues are more appropriately addressed in connection with his IAC claim, which is discussed below.

7

> so in a neighborhood known for drug dealing, and he fled upon the approach of the police. (See People v. Mims (1992) 9 Cal. App. 4th 1244, 1248-1249 [probable cause existed where police observed transaction involving apparent exchange of baggie for currency in high crime area and the defendant attempted to gain access to residence to evade police]; People v. Maltz (1971) 14 Cal. App. 3d 381, 392 ["the officers observed defendant engage in two apparent exchanges in the same area within approximately 40 minutes and they observed him return several times to the vicinity of the yard of the property"]; see also People v. Limon (1993) 17 Cal. App. 4th 524, 532-533 (Limon) ["Here there was more than an apparent exchange. Before and after the exchange defendant walked over and reached into an apparent hiding place. This conduct suggested drug sales."].) ¶ All of the cases cited by defendant are easily distinguished; among other things, none of the cases involved multiple suspicious transactions combined with attempted evasion of the police. (Cunha v. Superior Court (1970) 2 Cal. 3d 352, 357 [single transaction in narcotics trafficking area]; People v. Knisely (1976) 64 Cal. App. 3d 110, 114-115 [same].) ¶ The police had probable cause to arrest defendant.

Id., *3 (emphasis added).

The state appellate court also found that Officer Walle did not use excessive force in effectuating Petitioner's arrest by use of a Taser. Id., *3-6. The court analyzed Petitioner's Fourth Amendment claim under the reasonableness standard articulated in Graham v. Connor, 490 U.S. 386, 396 (1989), as follows:

> "The 'most important' factor under Graham is whether the suspect posed an 'immediate threat to the safety of the officers or others.' [Citation.] 'A simple statement by an officer that he fears for his safety or the safety [of] others is not enough; there must be objective factors to justify such a concern.' [Citation.]" (Bryan[ v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010)]) In the present case, although defendant had not threatened the officers or brandished a weapon, at the time he was stunned by the Taser he was attempting to reach a location outside the view of the officers. Because there was probable cause to believe defendant was a drug dealer, and because drug dealers not uncommonly have access to firearms (Limon, supra, 17 Cal. App. 4th at p. 535), Walle was reasonably concerned that defendant might access a firearm inside the house. Also, if defendant had not been stunned, the police would have had to enter the house to effectuate the arrest, and Walle was reasonably concerned that an arrest in the house would present added and unpredictable dangers, either from defendant or others. Accordingly, Walle did have objectively reasonable concerns for his safety and the safety of the other officers at the time he stunned defendant. (See Menuel v. City of Atlanta (11th Cir. 1994) 25 F.3d 990, 995 [from the viewpoint of an officer confronting a dangerous

8

> suspect, "a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death"]; cf. Bryan, at pp. 826-827 [no "immediate threat" from suspect who was unarmed and standing still over 15 feet from officer].)
>
> Finally, it is clear that defendant was actively resisting and trying to evade arrest by moving into the house. Defendant argues there is no evidence he was aware of the officer's attempt to detain him. But Walle testified that defendant saw him from 20 feet away and failed to respond to his yelled command to stop. Because defendant knew Walle desired to detain him, defendant had a duty to permit himself to be detained. (In re Gregory S. (1980) 112 Cal. App. 3d 764, 778.) His failure to do so provided additional justification for the officer's use of force.

Id., *4-5 (emphasis added, footnote omitted).

### 2.     **Legal Standard**

An IAC claim under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 688.  Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  To satisfy the second prong under Strickland, petitioner must establish that he was prejudiced by counsel's substandard performance.  See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).

Under AEDPA, a federal court is not to exercise its independent judgment in assessing whether the state court decision applied the Strickland standard correctly; rather, the petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cullen v. Pinholster, — U.S. —, 131 S. Ct. 1388, 1403 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."). The Supreme Court has specifically warned that: "Federal habeas courts must guard

against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 789 (2011) (emphasis added).

### 3.     Analysis

Petitioner claims that defense counsel was ineffective for failing to move to suppress evidence seized following his arrest on the grounds that (1) Officer Walle lacked probable cause to arrest, and (2) his use of excessive force rendered the arrest unlawful. "[I]n order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome." Bailey v. Newland, 263 F.3d 1022, 1029 (9th Cir. 2001) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)).  As explained below, Petitioner makes no showing that he would have prevailed on the suppression motion on either ground.

#### *a)     Probable Cause*

"Probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." United States v. Noster, 590 F.3d 624, 629-30 (9th Cir. 2009).  When law enforcement officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to effectuate an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety. Virginia v. Moore, 553 U.S. 164, 178 (2008). Under the collective knowledge doctrine, "the knowledge of one [officer] is presumed shared by all." United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (citing Illinois v. Andreas, 463 U.S. 765, 722 n.5 (1983)).  Probable cause . . . is not a high bar." Kaley v. United States, 134 S. Ct. 1090, 1103 (2014).

Here, the state appellate court found that the officers had probable cause to arrest Petitioner on the grounds that "the officers observed defendant engage in five transactions that could be construed only as drug sales, he did so in a neighborhood known for drug dealing, and he fled upon the approach of the police." White, 2011 WL 1457181, *3. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The state appellate court's decision was reasonable in finding probable cause for Petitioner's arrest based on his involvement in *five* transactions that could be construed as drug sales. See United States v. Angulo-Lopez, 791 F.2d 1394, 1398 (1986) (pattern of exchanging "packages or objects" supports probable cause to believe suspect is engaged in drug dealing); United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987) ("direct evidence of drugs or money changing hands" indicates drug dealing). Additionally, although presence in a high-crime area does not, standing alone, provide grounds to detain a suspect, the record shows that Petitioner conducted these apparent sales in an area known for drug activity. This, too, supports the conclusion he was selling drugs. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Finally, upon seeing Officer Walle approach, Petitioner and the two men on bikes fled. "[U]nprovoked flight" from a police officer may suggest criminal activity. Id.; California v. Hodari D., 499 U.S. 621, 623 n.1 (1991). This is particularly true when the conduct is "flight plus" an additional suspicious circumstance, such as presence in a high crime neighborhood. Wardlow, 528 U.S. at 124; United States v. Smith, 633 F.3d 889, 894 (9th Cir. 2011) (flight in high-crime neighborhood particularly suspicious).

Petitioner argues that the "observation of exchanges of unknown objects—even for currency—in a high crime area does not create specific, articulable facts needed to generate probable cause to arrest for drug sale." Dkt. 1 at 41. In support, Petitioner cites Cunha v. Superior Court, 2 Cal. 3d 352, 358 (1970), which held that officers lacked probable cause to arrest a suspect who they saw in broad daylight walking in an area

11

1   known for frequent narcotics traffic, where the suspect looked around, and made a hand-
2   to-hand exchange. Since Cunha, however, the California Supreme Court has stated that an
3   "area's reputation for criminal activity is an appropriate consideration in assessing whether
4   an investigative detention is reasonable under the Fourth Amendment." People v. Souza, 9
5   Cal. 4th 224, 240 (1994). In any event, Cunha is distinguishable on its facts. In this case,
6   Detective Chesney observed multiple transactions involving Petitioner's repeated
7   exchange of small objects, including the receipt of cash, and Petitioner also attempted to
8   flee. CT 8-12; 24-25.

9   Therefore, the state appellate court was objectively reasonable in finding that police
10  had probable cause to arrest Petitioner for the drug offenses. Because there is no
11  reasonable probability that a motion to suppress based on lack of probable cause would
12  have been granted, defense counsel was not ineffective for failing to file a motion that
13  would have proven unsuccessful. See Morrison v. Estelle, 981 F.2d 425, 429 (9th Cir.
14  1992) (the failure to make a futile objection does not constitute ineffective assistance of
15  counsel). The Court therefore finds that there is a "reasonable argument that counsel
16  satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 789. Accordingly,
17  Petitioner is not entitled to relief on his IAC claim relating to defense counsel's failure to
18  renew his motion to suppress based on lack of probable cause.

### b)   *Excessive Force*

Petitioner also argues that he would have succeeded on a motion to suppress based on the use of excessive force. Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. See Graham, 490 U.S. at 394. "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. Under Graham, the reasonableness of the officer's conduct is based on the consideration of three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the police or others, and (3) whether the suspect is

fleeing or resisting arrest. Id. at 396-97. In considering an excessive force claim, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396; Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003).

Petitioner argues that shooting him with a Taser amounts to excessive force, which, in turn, justifies the suppression of evidence seized as a "direct result of the Taser attack." Dkt. 1 at 44-49. However, at the time the state appellate court rendered its decision in this case, the United States Supreme Court had not yet discussed the use of Tasers in relation to the Fourth Amendment.[6] Indeed, it was not until fairly recently that the Ninth Circuit has addressed the use of a Taser. See Mattos v. Agarano, 661 F.3d 433, 452 (9th Cir. 2011) (en banc) (officer's use of Taser in dart mode in August of 2006 did not violate clearly established Fourth Amendment law). In the absence of clearly established Supreme Court authority, the state appellate court's decision rejecting Petitioner's excessive force claim can be considered neither contrary to nor an unreasonable application of clearly established Supreme Court law. Thus, even if the state appellate court erred in rejecting Petitioner's excessive force claim, he would not be entitled to relief, since there is no clearly established Supreme Court law for the state appellate court to contravene. Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir. 2009) ("When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue.") (citing Carey v. Musladin, 549 U.S. 70, 76-77 (2006)).

The above notwithstanding, the state appellate court's analysis of this issue was reasonable. The state court found that while use of a Taser presented a "serious intrusion

---

[6] It remains an open question whether reviewing federal habeas courts should apply "clearly established" law as it existed at the time state courts considered Petitioner's claims, or as it existed when Petitioner's conviction became "final" (i.e., 90 days after highest state court's ruling). See Smith v. Spisak, 130 S. Ct. 676, 681 (2010); see also Moses v. Payne, 555 F.3d 742, 751 (9th Cir. 2009) (noting that the law must be clearly established by the Supreme court "at the time the state court renders its decision."). Here, the last reasoned state court decision is the California Court of Appeal's decision issued on April 15, 2011. Whether measured by the law as it existed at the time of the state appellate court's opinion or when Petitioner's conviction became final, no Supreme Court precedent existed to guide the state courts' decisions.

into the core interests protected by the Fourth Amendment, . . . the People demonstrated a substantial interest in the use of force in this case."[7] White, 2011 WL 1457181, *4. Citing Graham, the state appellate court held that the relevant consideration thereunder militated in favor of finding that the officer's conduct was reasonable. Id. (quoting Graham, 490 U.S. at 396). First, the court noted that drug dealing is a "serious crime" with "obvious social costs." Id. Second, the court acknowledged the record showed that at the time Petitioner was stunned by the Taser, he was in the process of running towards a location out of the officers' view. Id. Because it is "not uncommon" for drug dealers to have access to firearms, the court determined that Petitioner's conduct presented an immediate threat to the officers' safety. Id. Finally, the court noted that Petitioner "was actively resisting and trying to evade arrest by moving into the house." Id.

The record includes sufficient facts to support the state appellate court's determinations, based on the totality of the circumstances. As Officer Walle ran towards him yelling for him to stop, Petitioner opened the front door and crossed the threshold of the house at 204 Nevin Avenue. CT 25-26. Unable to close the gap between himself and Petitioner, and concerned Petitioner would barricade himself inside the house and further resist arrest, Officer Walle discharged his Taser. CT 26-27. In addition, Office Walle testified that prior to discharging his Taser, he did not know "what was in the house or if there were other people or weapons." CT 26-27. Officer Walle testified he made a "successful connection" and caused Petitioner to fall onto a couch inside his home and drop a bag of cocaine base. CT 27. The state appellate court noted that there was no evidence that Petitioner suffered any additional injuries as a result of the shock, and Petitioner does not dispute this. See White, 2011 WL 1457181, *4 n.6. After the cycle had ended from the Taser, Petitioner reached into his right-hand pocket and removed

---

[7] The state appellate court determined that the only known effect was that the Taser discharge caused Petitioner to fall onto a nearby couch as he entered the house, and there was no evidence of any additional effects. White, 2011 WL 1457181, *4 note 6.

another bag of cocaine base and threw it five or six feet across the living room floor.  CT 27-28.

In sum, the state appellate court reasonably analyzed each Graham factor to determine the reasonableness of Officer Walle's use of the Taser when arresting Petitioner.  Therefore, the state appellate court was reasonable in concluding that Officer Walle's use of the Taser did not amount to excessive force, and, instead, it was justified as a means of resolving a rapidly-evolving situation that could have quickly escalated.  Because there is no reasonable probability that a motion to suppress based on the use of excessive force would have been granted, defense counsel was not ineffective in failing to make a futile motion.  See Morrison, 981 F.2d at 429.  The Court finds that there is a "reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington, 131 S. Ct. at 789.  Accordingly, Petitioner is not entitled to relief on his IAC claim based on defense counsel's failure to renew his motion to suppress based on the use of excessive force.

## IV.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

## V.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate any pending motions, and close the file.

1    IT IS SO ORDERED.

3    Dated: 9/26/14

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

8    P:\PRO-SE\SBA\HC.11\White3709.denyHC-final-revised090914.docx